INHABITANTS OF HOWLAND *versus* INHABITANTS OF BURLINGTON.

By R. S., c. 24, § 1, a married woman has the settlement of her husband, if he has any in the State.

Where a man, having his settlement in the defendant town, married a wife in 1844, and, in 1845, abandoned her and removed to Ohio, where he has since remained; and, in 1846, the wife married another man by whom she had several children, for whose support, as well as her own, this action was brought by the town in which, after the second marriage, the parties with

their children resided seven consecutive years; and, in 1849, the former husband obtained a divorce in Ohio; — *Held,*

1. That the former marriage established the settlement of the pauper mother in the defendant town;

2. That the second marriage being void, her settlement remained unchanged thereby;

3. That, notwithstanding the abandonment, she could neither by marriage or residence acquire a new settlement, while her former marriage relations remained unaltered;

4. That the children being illegitimate, had the settlement of their mother at the time of their birth : and

5. That the divorce would not affect the wife's previous settlement.

Where a wife married a second husband after being deserted by a former, who subsequently obtained a divorce, this Court will not presume that there was a remarriage of the second husband and wife, after the divorce of the former, in the absence of proof of knowledge of the divorce on their part, especially when all of the events are of recent date.

ON REPORT from *Nisi Prius,* CUTTING, J., presiding. ASSUMPSIT for supplies furnished mother and children. The facts appear in the opinion.

*McCrillis,* for the plaintiffs.

*J. A. Peters,* for the defendants.

If the woman was not legally married in the second attempt, then she gained a settlement in her own right by five years residence in Howland.

The *general* doctrine that a married woman can gain no settlement, during coverture, where the husband gains none, is founded on a presumption that the one actually belongs where the other is living; that such place is the *home* of both. But, in this case, the presumption is overcome. There was a complete actual separation, and the home of the one was not the home of the other.

It is also held that minor children cannot have a settlement distinct from the father. *Hallowell* v. *Gardiner,* 1 Maine, 93. But this is rather the statement of a *presumption* that a child belongs where the parent does.

But a father can sever the parental tie so that a minor child can acquire a separate residence. And why cannot, upon the same principle, the marital tie be severed by an

abandonment, so as to allow a wife to acquire an independent settlement?

A husband can acquire a residence in a place where his wife does not unite with him. 11. Maine, 190, and cases cited.

At common law an abandonment of a married woman by a husband, removing from the State, restores her to many rights, duties and obligations of a *feme sole*. 4 Met., 478. But, if his abandonment would not leave her to acquire a new settlement, then it is because an abandonment *in fact* is not one *in law;* and, in such case, her residence would be his, and *thereby* a settlement was acquired.

The residence of the wife is evidence of the domicil of the husband. 11 Maine, 190; 13 Maine, 225.

There are cases where it has been decided that a woman cannot control the domicil of a husband, when he has abandoned her, and lives apart from her, *in this State.* But how is it when the deserting party lives out of the State? No question thereby arises of two residences here. Must he not be considered as having some domicil here? Is not that where his legal wife may be? Is not *all* the domicil he has here; is not *such* as he has, in the town where his wife lives?

It would seem inconsistent that she cannot acquire a residence in his absence, either for herself or for him. If he cannot be separated from her, nor she from him, and he has no residence in this State independent of her, then it must, in the eye of the law, be *with* her; and, while *she* lived in Howland *he* lived there. He was nowhere else in this State.

It may be doubted if the divorce in Ohio was a good divorce here, the cause not existing there. In such case her residence would still longer be his in Howland.

But, having been married to Kimball, the moment her first husband became divorced the second marriage became a valid one.

Marriages are *usually* consummated *after* formal ceremonies of contract. This was celebrated and consummated

*before.* It would be public policy to uphold the second marriage, after the impediment of the first marriage has been removed. This construction would defeat the plaintiffs' claim. This is like the case of a woman who married upon information that her husband is dead, who was not dead at the date of the second marriage, but dies soon after, making her marriage good.

But, if this is not so, then arises the question whether, upon the divorce in 1849, she was not remitted back to the residence which she had in *Lowell*, at the time of her first marriage. The statute reads, " a married woman has the settlement of her husband." But she can no longer have it after he ceases to be her husband. The relation upon which the settlement subsists has been destroyed. The effect of a divorce is to *dissolve* the marital tie and all its consequences. During the marriage relation she has his settlement, because " *they are one in law, and he is that one,*" her own settlement is in abeyance. A " married" woman has, &c. But she is not married to him.

Upon the point, that the second marriage was good from the divorce and dissolution of the first one, there are some analogies and authorities.

A second marriage in New York, by a woman whose husband has been absent and unheard of for five years, is not legal, although it is purged of the crime of bigamy, under their statute. *Fenton* v. *Reed*, 4 Johns., 52. But, from a continued cohabitation, *after* the death of the former husband, a subsequent marriage may be inferred. Same case, 4 Johns., 52; *Jackson* v. *Claw*, 18 Johns., 346; *Rose* v. *Clark*, 8 Paige, 574. And this though no formal ceremony or regular solemnization. *Hyde* v. *Hyde*, 3 Bradford, 509; N. Y. Surrogate Court, Abbott's N. Y. Digest, vol. 3, p. 772, item 32, under title of marriage; *Hicks* v. *Cochran*, 4 Edw. Ch., 107; 11 U. S. Dig., 260, article on item 106.

A second marriage is void *during the lifetime* of a first husband. *Kenley* v. *Kenley*, 2 Yeates, 207; 2 U. S. Dig., p. 510, item 353.

Where a person marries under the age of consent, at common law, the marriage is void, but valid, by cohabitation continued after that age.   2 Kent's Com., 78.

In all civil cases, (save crim. con.,) marriage may be inferred from circumstances.   Cohabitation is enough.   Believing themselves man and wife, and living as such, may be sufficient.   *Taylor* v. *Robinson*, 29 Maine, 323.

In this case, Kimball and Mrs. Neal were openly married; have ever since cohabited together; have numerous children; this day believe that they are lawfully married; and, so notorious has been this cohabitation, that Howland once paid a pauper bill on their account, without even knowing that she had another husband.

But, further, if their children are illegitimates of Mrs. Neal, they follow her own settlement and not her husband's. That is, such settlement as she has and did have, and would have, if there was no relation of husband and wife; otherwise they are thrown virtually on the husband's settlement. And especially should this be so as far as concerns the children born after the divorce.

But may not all these children be the legitimate children of the second husband, Kimball?   Are they not "acknowledged" and "adopted" into the father's family?   See § 3, c. 75, R. S.

APPLETON, C. J.—This suit is for supplies furnished Mary Jane Neal, *alias* Kimball, and her minor children.

It is admitted that the pauper mother, in 1844, married David B. Neal, who had his settlement in the defendant town.   By this marriage the wife, by the express provisions of R. S., c. 24, § 1, acquired the settlement of her husband. This settlement remains until a new one is gained.

In 1845, Neal deserted his wife and removed to Ohio, where he has since remained.   In 1846, Mrs. Neal married one Abram T. Kimball, by whom she had the children for whose support, as well as her own, this action is brought.

After their marriage, Kimball and wife resided for more than seven years in the plaintiff town.

The second marriage being illegal and void, the settlement of the mother remained unchanged thereby. It still continued that of her first and legal husband. Notwithstanding his abandonment, his wife could neither by marriage nor by residence acquire a new settlement, while those relations remained unaltered. *Pitt-ton* v. *Wiscasset*, 4 Greenl., 293; *Augusta* v. *Kingfield*, 36 Maine, 235.

The children, being illegitimate, " have the settlement of their mother at the time of birth." R. S., c. 24, § 1.

In 1849, Neal obtained a divorce from his wife, on the ground of adultery with Kimball. This divorce was granted in Ohio, of which State he was a resident. But this would not affect the wife's previous settlement.

It is insisted that, after this divorce of Neal, it may be presumed that a new marriage has taken place and, consequently, that the children of the pauper mother, born since the divorce, are legitimate.

It does not appear that Kimball, or his so called wife, were aware of the divorce obtained by Neal. If not, no reason would exist for a second performance of the marriage ceremony. The parties had been once married, and a repetition could not reasonably be presumed without proof of knowledge on their part of the fact of a divorce, which alone would lead to such second marriage. Without such knowledge, a second marriage would not be more likely to take place at one time than another—after than before the divorce. The paupers are residents of the county. The facts are recent. The fact of a second marriage is easily susceptible of proof. The parties to it are readily accessible. The fact is important for the defence. The entire absence of any evidence tending to show a second marriage, or of a knowledge on the part of Kimball and his, so called, wife, of the facts which would induce such marriage, are no slight proofs of its non-existence. The original cohabitation is shown to have had an illicit origin. No proof is offered to

show that a cohabitation, unlawful at its commencement, has ceased to be so. After a long lapse of time and the death of witnesses, courts from necessity may indulge in presumptions. But it would hardly be deemed reasonable to resort to presumption when the events to be proved are of recent occurrence, and the witnesses, by whom the truth could be established, are present in Court, or, if not present, when by reasonable diligence their presence could be obtained, and the facts be ascertained by the simple and obvious process of asking for them.                *Defendants defaulted.*

·CUTTING, DAVIS, KENT and WALTON, JJ., concurred.